UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 3:11cr239 (JBA) |
| v. | |
| DAVID CSANADI,<br>*Defendant.* | August 31, 2012 |

RULING ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant David Csanadi moves [Doc. # 15] this Court for the suppression of videotapes and DVDs seized during the April 8, 2011 search of his residence on the grounds that the officers exceeded the scope of the search and seizure authorized by the warrant and that there was no probable cause to support either a warrant for the seized items or for their seizure without a warrant. The Government opposes, arguing that plain language of the warrant authorized the search and seizure of the videotapes and DVDs, and, in the alternative, that the officers acted in good faith reliance on the warrant and they would have inevitably discovered this evidence. For the reasons discussed below, Defendant's motion to suppress evidence will be denied.

I.  Factual Background

David Csanadi was indicted by the Government and charged with three counts of production of child pornography and one count of possession of child pornography. The charges arise from an investigation that began in October 2010, when a detective with the Monroe Police Department downloaded several files off of a peer–to–peer file sharing network from an IP address belonging to Mr. Csanadi in Newtown, Connecticut. (Suppression Hr'g Tr. at 9–11.) The case was assigned to Detective Frank of the Newtown Police Department. (*Id.* at 11.) Based on the information gathered in the Monroe

investigation and from his surveillance of the Defendant's home (*id.* at 12–16), on March 31, 2011, Detective Frank obtained a search warrant for the house[1] for the following evidence relating to possession of child pornography:

> Identification of computerized bulletin boards, Internet service provider(s), electronic addresses, read and unread e–mail, personal diary(s), written/printed/recorded notations, video and/or audio recording devices. Computer hardware consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but not limited to) any data processing devices; internal and peripheral storage devices (such as fixed disks, internal/external hard disks, floppy disk drives, and diskette, optical storage devices, and other memory storage devices, periphernal [sic] input/output devices); any related communications devices; other computer related operation equipment needed to access, input, and retrieve data through an Internet service provider. To seize items and transport them to the Connecticut State Police Computer Crime and Electronics Unit, or any other certified agency qualified to perform such investigative examination, and to review, which includes making true copies of the data, and examining the contents of the data therein.

(Search Warrant, Ex. A to Def.'s Mot. To Suppress.) In order to accommodate for the reduced space on the new Connecticut warrant forms, Detective Frank claims he used the phrase "video and/or audio recording devices," rather than enumerating the devices to be

---

[1] When Detective Frank and Detective Joudy (also of the Newtown Police Department) conducted the surveillance of Mr. Csanadi's home, they determined that there were two buildings on the property—a main house and a cottage. Defendant spoke with the detectives while they were observing the property and informed them that he lived in the main house and the cottage was used for storage. (Suppression Hr'g Tr. at 12–16, 45.) Based on this information, Detective Frank obtained warrants for both the main house and the cottage (*id.* at 16), but when the warrants were executed, he determined that Mr. Csanadi lived in the cottage and discontinued the search of the main house without seizing any evidence (*id.* at 68, 86, 98–99).

seized, as he had in prior warrant applications.[2] (Suppression Hr'g Tr. at 22–26.) The warrant was reviewed by a police inspector and a representative of the State's Attorney's Office before it was approved by the judge. (*Id.* at 26.)

On April 8, 2011, Detective Frank and a team of officers from the Newtown Police Department executed the search warrant on Defendant's home. (*Id.* at 27–28.) Inside of the home, the officers discovered a set of DVDs containing modeling videos with pictures of prepubescent children on the covers. (*Id.* at 33; Frank Decl. [Doc. #23-1] ¶ 20.) There were also various commercially produced pornographic DVDs scattered throughout the cottage with titles such as "Barely Legal" and "Teenage Peach Fuzz." (Suppression Hr'g Tr. at 33; Frank Decl. ¶ 19.) The officers also located several homemade DVDs with handwritten titles of a female's first name. When he was asked about the name, Defendant responded that the female was his goddaughter and "the love of his life." (Frank Decl. ¶ 20.) There were also pictures of young girls on Mr. Csanadi's refrigerator. (Suppression Hr'g Tr. at 33.)

One of the officers brought a blue plastic bin in the rear bedroom of the home to the attention of the detectives. The bin contained numerous commercially produced pornographic DVDs with titles such as "Young Muff" and "Barefoot 20" (a series catering to individuals with a sexual foot fetish). The bin also contained envelopes labeled "8mm

---

[2] Detective Frank testified that on a previous warrant application he had been instructed by the reviewing judge not to use a small font for future applications. (Suppression Hr'g Tr. at 24–26.) When Detective Frank realized he did not have enough room to enumerate all of the devices to be seized on the Csanadi warrant application, he first attempted to attach a list of items to the application, but was instructed not to use an attachment by the inspector in charge of reviewing warrant applications before they are sent to the State's Attorney's Office for final approval. (*Id.*)

home movies" containing 8mm tapes, and a plastic bag containing VHS tapes. (Suppression Hr'g Tr. at 33–34; Frank Decl. ¶ 23.) Upon viewing these items, Detective Joudy recalled a 2008 investigation in which an individual had reported viewing a DVD of a home movie Mr. Csanadi had made and transferred from tape to DVD. The movie portrayed Mr. Csanadi sexually assaulting a prepubescent girl. (Suppression Hr'g Tr. at 89.) The complainant later recanted and the case was closed. (*Id.* at 66–67.) Detective Joudy reminded Detective Frank about this previous investigation. (*Id.*) Detectives Frank and Joudy reread the search warrant to verify that these items were covered, and seized the tapes and DVDs from the bin, in addition to several other items, including Mr. Csanadi's computer. (*Id.* at 35–36.) During the search, Defendant also gave a written statement to the police in which he stated that he had used LimeWire to download pornography, but that he never went beyond the "barely legal" age bracket, and had never knowingly downloaded child pornography. (*Id.* at 30–31; Frank Decl. ¶ 15.)

On April 11, 2011, Detective Frank began to review the DVDs and tapes seized from Defendant's residence. (Suppression Hr'g Tr. at 38.) One of the 8mm tapes portrayed Mr. Csanadi sexually assaulting a prepubescent girl. (*Id.*) Upon viewing this tape, Detective Frank immediately called the state attorney's office to inform them of the escalation of the investigation and he was instructed to complete his review of the videotapes and to draw up an arrest warrant for Defendant. (*Id.*) He was not advised that he would need an additional warrant to view the tapes. (*Id.* at 73.) Mr. Csanadi was arrested on state charges of risk of injury to a minor and sexual assault, and subsequently indicted by a federal grand jury. (*Id.* at 43.)

II.  Discussion

    *A.    The Validity of the Search Warrant*

The Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Mr. Csanadi argues that the plain language of the warrant does not cover the DVDs, VHS tapes, and the 8mm tapes seized from his residence, and that even if such evidence was covered by the warrant, it was not supported by probable cause, because probable cause was limited to evidence of possession of child pornography on a computer.

    *1.    The Scope of the Search Warrant*

Defendant Csanadi claims that the phrase "video and/or audio recording devices" does not encompass DVDs, VHS tapes or 8mm tapes, as they are not "recording devices," and thus the 8mm tapes and VHS tapes were not covered by the plain language of the warrant. (Def.'s Mot. To Suppress ¶ 4.)

The description of the items to be seized under a warrant must be "sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." *United States v. LaChance*, 788 F.2d 856, 874 (2d Cir. 1986) (quoting *United States v. Vargas*, 621 F.2d 54, 56 (2d Cir. 1980)) (alterations in original). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional." *Horton v. California*, 496 U.S. 128, 140 (1990). With respect to the executing officers' interpretation of the warrant, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search warrant"; that discretion extends to the officers' interpretation

5

of the scope of the warrant, which is to be read in a commonsensical, rather than hyper–technical, manner. *Johnson v. Massey*, No. 3:92-cv-178, 1993 WL 372263, at *4 (D. Conn. Sept. 17, 1993); *see United States v. Catapano*, No. 05-cr-229, 2008 WL 3992303, at *3 (E.D.N.Y. Aug. 28, 2008) (officer's search of checks found in office space that was connected to and not distinguished from the office space that was the subject of the warrant was permissible "[u]nder a broad, commonsensical interpretation of the warrant" where the warrant allowed for the search of "any affiliated entity being used to generate cash").

Both detectives who executed the warrant at issue in this case testified at the suppression hearing that they understood the phrase "video and/or audio recording devices" to include videotapes and DVDs. Detective Frank stated that he interpreted this phrase to mean "[v]ideotapes [and] [a]nything that's going to be used to save media on it, some sort of media on it" (Suppression Hr'g Tr. at 18), and Detective Joudy stated that he understood 8mm videotapes to be recording devices "because you can store audio and video on the tape itself, on the magnetic tape" (*id.* at 101–02). Detective Frank also testified that he had used the phrase "video and/or audio recording devices" as a "summar[ry] to make up for VHS, videotapes, homes movies. To me, it's all the same." (*Id.* at 23). Furthermore, before seizing these items, the Detectives reread the warrant to verify for themselves that the items could be properly seized under its terms. (*Id.* at 92.) Detective Frank and Joudy's interpretation of the search warrant as including videotapes and DVDs within the definition of recording devices was commonsensical and not unreasonable. The warrant focused on the presence of child pornography images, in all forms of recording, in Defendant's home. Given their location in a bin of pornographic materials, that the videotapes and DVDs

6

would be used as "recording devices" to store images of child pornography was not an unreasonable interpretation.

Furthermore, several courts have described videotapes as "recording devices." *See, e.g., United States v. Pliego*, 578 F.3d 938, 941 (8th Cir. 2009) (referring to an 8mm videotape as a "recording device" in deciding defendant's appeal of his conviction for production of child pornography) ("[The defendant] concedes that the government established that the 8mm videotape seized from his bedroom dresser was manufactured outside of Minnesota, but he argues that the government failed to prove 'that this was the tape that was used to produce the visual depiction at issue in this case.' . . . But [the defendant] points to no evidence in the record supporting his conjecture that the footage of his sexual encounter with [the victim] was originally produced using another recording device."); *Macrovision v. Sima Prods. Corp.*, No. 05 Civ. 5587(RO), 2006 WL 1063284, at *1 (S.D.N.Y. Apr. 20, 2006) (describing defendant's hardware products as enabling a consumer to make recordings "on videotape or other recording device"); *State v. Miller*, 320 Or. 316, 318 (Or. 1994) (defining "non–stenographic means" in the context of an Oregon statute allowing parties to record depositions by non–stenographic means, as including "videotape and any other recording device capable of producing a permanent and accurate record"). With these cases as a backdrop, and in light of a warrant that permitted the seizure of recording devices and storage devices,[3] a plain reading of the warrant would include videotapes and DVDs within the definition of "recording devices."

---

[3] For example, in addition to recording devices, the warrant also permitted the seizure of "internal and peripheral storage devices (such as fixed disks, internal/external hard disks, floppy disk drives, and diskette, optical storage devices, and other memory storage devices, periphernal [sic] input/output devices)." (Search Warrant.)

*2. Probable Cause*

Defendant Csanadi also claims that in the event that the videotapes and DVDs were included within the plain meaning of the search warrant, the warrant was invalid, because there was probable cause to search only for evidence of possession of child pornography on his computer.

"In deciding whether probable cause exists for a search warrant, a judge must determine whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court must "accord 'great deference' to a judge's determination that probable cause exists, and [] resolve any doubt about the existence of probable cause in favor of upholding the warrant." *Id.*

Several courts have considered and rejected the argument that evidence that an individual has downloaded child pornography is insufficient to establish probable cause to search for child pornography possessed in formats unrelated to a computer. In *United States v. Ladeau*, No. 09-40021, 2010 WL 1427523 (D. Mass. Apr. 7, 2010), the court rejected a defendant's challenge that there was no probable cause to support a warrant for a search of his home for both digital and hard copy images of child pornography. Similar to the original investigation in this case, in *Ladeau*, police sought a search warrant for the defendant's home after uncovering evidence that he had downloaded child pornography through an internet file–sharing site. *Id.* at *1–2. The court held that:

> [U]nder the circumstances presented here, the evidence that digital child pornography would be found at [the defendant's] home provided probable cause that child pornography in other forms would also be found. Because child pornography can be produced in several different formats—and because it can be readily changed from one format to another (such as

> scanning a photograph to produce a digital image, or printing a digital image to photographic paper)—it makes little sense to require that specific evidence of each format be provided to a magistrate judge to support the issuance of a warrant that authorizes a seizure of child pornography in that particular form. Furthermore, the presence of child pornography in one format makes it probable that child pornography would also exist in a different format, given the ease of conversion between formats and relative unimportance of the format to the user's ability to view the image. For these purposes, therefore, there is no real distinction between child pornography in a digital format, an analog format, or a photographic format.

*Id.* at *6; *see also United States v. Grimmett*, 439 F.3d 1263, 1270–71 (10th Cir. 2006) (finding probable cause to support a search warrant for "videocassettes, books, magazines and photographs" containing child pornography based on a complaint that a witness had observed child pornography on the defendant's computer). *Cf. United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) ("[I]t is well known that 'images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes.'" (citing *United States v. Lamb*, 945 F. Supp. 441, 460 (N.D.N.Y. 1996); *United States v. Lamb*, 945 F. Supp. 441, 460 (N.D.N.Y. 1996) ("The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to quickly destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.")

Thus, it has been widely recognized as a matter of common sense that evidence that an individual possesses child pornography in one format necessarily gives rise to a probability that he possesses it in other formats as well. The judge considering the warrant application in this case would have been able to rely on the common sense proposition that the information supporting the probable cause that Defendant Csanadi stored images of child pornography on his computer would also support the fair probability that he possessed child pornography in the other formats enumerated in the application. *See Gates*, 462 U.S. at 214. The search of Mr. Csanadi's home for "video and/or audio recording devices" containing evidence of possession of child pornography was therefore supported by probable cause, based on the police investigation of his LimeWire activity.

B. Inevitable Discovery

The Government claims that even if the videotapes and DVDs seized from the bin in Defendant Csanadi's bedroom were not covered by the plain meaning of the search warrant, there would have been sufficient probable cause to seize these items had Detectives Frank and Joudy applied for a second search warrant specifically enumerating videotapes and DVDs, and thus this evidence falls within the inevitable discovery exception to the exclusionary rule.

Evidence obtained by law enforcement during an otherwise unreasonable search and seizure is nonetheless admissible "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "[I]llegally–obtained evidence will be admissible under the inevitable discovery exception to the exclusionary rule only where a court can find, with a high level of confidence, that each of the contingencies necessary to

the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006). Under this standard, in order for the videotapes to be admissible under the inevitable discovery doctrine, the Court must be able to conclude "with sufficient confidence" that Detectives Frank and Joudy would, in fact, have obtained a warrant to search and seize these tapes and DVDs if they had applied for one. *See id.* at 60–61.

The circumstances surrounding the search and seizure of the evidence challenged in this case provide sufficient support for just such a conclusion. There was evidence from the original online investigation that Defendant Csanadi possessed child pornography, and the Detectives' specialized training made them aware that individuals who collect child pornography usually do so in a variety of formats and media. (Frank Decl. ¶ 11). Officers also detected various pornographic materials and items strongly suggesting a heightened interest in young girls scattered throughout Defendant Csanadi's residence when it was searched. (*See* Suppression Hr'g Tr. at 32–33 ("But before going into the rear room, I started noticing, just in plain view, the place was very, very cluttered and scattered, things were scattered everywhere, but there were DVDs, I guess you could say professionally manufactured DVD cases with little kids on them in bathing suits that said 'modeling video.' I noticed pictures of little girls on the refrigerator. And for all the years I'd known [Defendant], he never had any children, to the best of my knowledge. I came across pornography scattered throughout the apartment—or the house.").)

Furthermore, the videotapes and DVDs at issue were found in a bag labeled "Home Movies" on tope of a pile of pornographic DVDs, including "barely legal" and fetish–oriented DVDs. Defendant also gave statements admitting that he had downloaded

11

"barely legal" pornography and describing his young goddaughter as "the love of my life." (Frank Decl. ¶¶ 15, 21.) Based on his training in investigating child pornography cases, Detective Frank stated that these items and statements raised his suspicions that Defendant was interested in child pornography. (Suppression Hr'g Tr. at 72; Frank Decl. ¶ 20.) Finally, Detective Joudy had knowledge of a prior complaint that Mr. Csanadi possessed a video depicting his sexual assault of a prepubescent female child. (Suppression Hr'g Tr. at 89–90; Frank Dec. ¶ 24.)

In light of the information obtained in the original investigation of Defendant Csanadi's online activities, Detective Frank's specialized training in investigating child pornography cases, the prior complaint pertaining to a home video portraying Defendant Csanadi sexually assaulting a pre–pubescent girl, and the overwhelming evidence that the officers discovered during the search of the residence, the Court can find, "with a high level of confidence" that had the officers secured the home while obtaining a warrant for the search and seizure of the videotapes and DVDs, such a warrant application would have been granted. Therefore, even if the seizure of these items was improper, it properly falls under an exception to the warrant clause and should not be excluded.

IV. Conclusion

In conclusion, the search warrant for Defendant's house was valid: the warrant specifically enumerated the items to be seized, including "video and/or audio recording devices," such as videotapes and DVDs, and the search for these items was supported by probable cause. Alternatively, the search and seizure of the videotapes and DVDs at issue satisfies the requirements of the inevitable discovery exception to the exclusionary rule. For the reasons discussed above, Defendant's motion [Doc. #15] to suppress evidence is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of August, 2012.